**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————————x

SAMUEL ACEVEDO, et al.,

                         Petitioners,

         -against-                                      20-cv-07361 (CM)(SN)

MICHAEL CAPRA,

                         Respondent.

———————————————————————————x


### ORDER ADOPTING REPORT AND RECOMMENDATION IN PART

McMahon, J.:

The learned Magistrate Judge has written a thorough and thoughtful Report, which I accept with thanks. Because the petition raises serious procedural issues that have troubled and divided the district courts, especially during the recent pandemic, and because those issue have not been definitively addressed by either the Supreme Court or the Second Circuit, I write in the hope that taking a stand one way or the other may result in appellate guidance.

The State's motion to dismiss the petition rested on two grounds: first, that this action relates to the conditions of petitioners' confinement and so cannot be maintained in habeas, but instead had to be raised in an action under 42 U.S.C. § 1983; and second, that if the claim asserted could be maintained in habeas, the petitioners failed to exhaust their administrative remedies. Concluding after an extensive and informative discussion that the first ground raised an unsettled issue of law, Judge Netburn decided to skip over it – to assume that the action could be maintained in habeas action under 42 U.S.C. § 2254 – because she could dispose of the case on the alternative ground that petitioners had not exhausted their administrative remedies as required by that statute.

It is tempting to adopt Judge Netburn's elegant solution. Indeed, several of my colleagues have done so in similar lawsuits arising out of the COVID-19 pandemic.[1] Respondent has no objection to such a course of action – especially as, if this case is properly maintained in habeas, Judge Netburn is absolutely correct that petitioners have failed to exhaust their administrative remedies (*see infra* p. 18).

However, I am reluctant to skip over the first question raised by the Respondents. Unless this case can properly be maintained under § 2254, the exhaustion issues that proved dispositive to the learned Magistrate Judge are entirely irrelevant. Entirely different exhaustion issues would come into play if this action could only be maintained under § 1983 – issues arising under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, which have not been briefed by the parties. And because there is at least some authority for the proposition that a district court should construe a claim that was erroneously brought in habeas as having been brought under § 1983, rather than simply dismissing the petition and requiring the petitioners to commence a new action,[2] this court feels compelled to come to grips with the procedural question that the Attorney General initially argued was fundamental: whether this case, which is not a "core habeas" in that petitioners challenge neither their underlying convictions not the legality or length of the sentences imposed on them, can be brought pursuant to the federal habeas statute.

I conclude that the answer to that question is no.[3]

---

[1] *See Slater v. Keyser*, No. 20 Civ. 3012 (KPF), 2020 WL 4016759, at *4 (S.D.N.Y. July 16, 2020); *Elleby v. Smith*, No. 20-cv-02935 (PAE), 2020 WL 2611921, at *3 (S.D.N.Y. May 22, 2020).

[2] See, e.g., *Rodney v. Romano*, 814 F. Supp. 311 (E.D.N.Y. 1993); *Adams v. McGinnis*, 317 F. Supp. 2d 243 (W.D.N.Y. 2004). I know of no requirement imposed by the Supreme Court or the Second Circuit that a petition be treated in this fashion, but it is a prudent course of action, especially when, as is often the case, the prisoner-petitioner is representing herself. Significantly, that is not the case here; petitioners are represented by counsel.

[3] This conclusion eliminates one thorny issue from this case: whether the claims of three of the petitioners must be severed and transferred to other judges of this court, who are currently considering habeas petitions filed by those three petitioners.

## BACKGROUND

Petitioners are nineteen prisoners who, except for one, are incarcerated at Sing Sing Correctional Facility in Ossining, New York. They have been convicted of felonies – most of them violent felonies, including second-degree murder, rape, first and second-degree burglary, robbery, and felony murder. Their convictions have been affirmed on appeal, and their subsequent habeas petitions have, with three exceptions, been denied; the three open petitions are presently pending before other judges of this court.

There is no doubt about the legality of either Petitioners' convictions or their sentences. None of the petitioners[4] alleges that he is presently eligible for release, aside from the fact that he is, for one reason or another, a person who is highly susceptible to contracting the COVID virus and/or suffering from a severe or complicated case of the virus.

*State Court Proceedings*

Judge Netburn's Report outlines in copious detail the procedural history of this case, and the court adopts that portion of her Report and incorporates it into this opinion. What follows is a more detailed discussion of state law as applicable to the salient facts:

On May 8, 2020, in the earliest days of the COVID pandemic, petitioners filed a petition for habeas corpus pursuant to CPLR Article 70, alleging that their incarceration during the COVID-19 pandemic violated the Eighth Amendment.

Under New York law, habeas petitions are prosecuted as special proceedings. They are commenced with the filing of an *ex parte* petition by the person restrained or by someone acting on his/her behalf, asking the court to issue a writ in order "to inquire into the cause for detention and for deliverance." CPLR 7002(a). Petitions are accompanied by orders to show cause, directed

---

[4] Aside, of course, from the three with pending habeas petitions, but they are not alleging the issues raised therein in this lawsuit.

to the custodian of the prisoner, directing the custodian to show cause why the prisoner should not be released. The petition and the accompanying order to show cause may be presented to any Justice of the Supreme Court (including the Appellate Division) in the judicial district where the prisoner is incarcerated, or to the local County Court judge. CPLR 7002(b).

If it appears from the face of the petition that the petitioner is not being illegally detained, the petition "shall be denied." CPLR 7003(a). Ordinarily, the judge who receives the petition does this by refusing to sign the accompanying order to show cause. Professor Vincent Alexander explains the process in his widely-cited Commentary to the CPLR (C:7003):

> Issuance of the writ, however, is contingent on the sufficiency of the petition. The petition must be denied, i.e., no writ should be issued,[5] if it appears from the petition or documents attached thereto that the person is not illegally detained . . . . And no writ should issue unless the alleged grievance, if proven, would entitle the petitioner to immediate release.

(Citations omitted.)

On September 9, 2020, Petitioners filed their petition, together with an order to show cause, seeking temporary release from confinement, before the Hon. Susan Cacace of the Westchester County Court. After reviewing the papers, Judge Cacace declined to sign the order to show cause. By email dated May 11, 2020, her law secretary advised petitioners' counsel that the order to show cause was not being signed because "the submitted Order to Show Cause does not raise a legitimate allegation of an illegal detention as required by the Article 70 statute." The law secretary futher noted the "absence of a legally sufficient claim within the papers which could entitle the petitioners to the relief they are seeking [i.e., release] pursuant to CPLR Article 70."

---

[5] As Professor Alexander notes, the issuance of an order to show cause, rather than an actual writ of habeas corpus, is permissible, in the issuing court's discretion, in circumstances where the petitioner is content not to be produced in court for the hearing. By asking the court to issue an order to show cause, rather than a writ of habeas corpus, petitioners in this case elected that route. There is no reason for me to believe that the statute operates any differently when a court is asked for one type of writ as opposed to the other.

CPLR § 7011 provides, in pertinent part, that a direct appeal to the Appellate Division lies from "a judgment refusing to grant the writ of habeas corpus or refusing an order to show cause issued under subdivision (a) of Section 7003, or from a judgment made upon the return of such writ or order to show cause." Plainly an appeal as of right lies from both (i) a judge's refusal to issue a writ or sign an order to show cause, and (ii) an adverse judgment entered after the return of a writ or order to show cause that the judge signed upon application. Therefore, Judge Cacace's refusal to sign petitioners' order to show cause was a decision from which a direct appeal could be taken. And while it is questionable whether the law secretary's email qualifies as an "appealable paper" under New York law,[6] petitioners took the precaution of filing a notice of appeal from Judge Cacace's refusal to sign the order to show cause on June 17, 2020. That appeal has never been perfected, although petitioners were given a deadline of December 9, 2020 by which to do so.

Petitioners also asked Justice Cacace to sign and file an order – which is unquestionably an "appealable paper" – memorializing her refusal to sign the order to show cause. She did so on July 13, 2020. Direct appeal lies from this order pursuant to CPLR 7011. The time to file an appeal from this order expires by law thirty days from the date on which a copy of this order is served, with notice of entry, on the petitioners through their counsel (CPLR 5513(a)). As far as this court is aware, neither side has served a copy of the July 13, 2020 order with a formal "notice of entry" on the other.[7] Despite this, it seems likely that the 30 day period for filing a direct appeal has

---

[6] Per CPLR 5512(a), appeals as of right may be taken only from a "judgment" or an "order" of a lower court. There are numerous opinions in the New York Reports discussing whether this or that document or communication qualifies as an "appealable paper."

[7] "Notice of entry" is a term of art in New York civil practice. It refers to a cover memo, the text of which has long been settled ("Please take notice that the within is a true copy of an order of [court], entered in the Office of the Clerk of Court on [date]"). To this notice must be appended a copy of the order entered by the court. There is no requirement that the prevailing party serve notice of entry on the losing party; either side can start the thirty-day clock running by providing the other with notice of entry of the order. CPLR 5513(a).

passed because, on July 17, 2020, petitioners served the Attorney General with an application pursuant to yet another statute, CPLR 5704 (see the next paragraph), to which was appended a copy of the July 13, 2020 order of Judge Cacace, stamped by the Clerk of Court with the location and date of entry, July 20, 2020. (Dkt. 1-1 at A2.) Service of the motion papers signed by petitioners' attorney, which referred to and included the document in a form indicating entry by the Clerk, generally satisfies the notice of entry requirement. *Dokaj v. Ruxton Tower Ltd. P'ship*, 55 A.D.3d 662 (2d Dep't 2008).

Petitioners did not file a notice of appeal from Justice Cacace's July 13, 2020 order.

Instead, on July 17, 2020, Petitioners made another attempt to get their order to show cause signed. CPLR 5704 "offers a special opportunity to a litigant aggrieved by the activity (or non-activity) of a trial judge in respect of an *ex parte* application." (Siegel, CPLR Practice Commentaries C:5704:1). CPLR 5704(a) provides as follows:

> The appellate division or a justice thereof may vacate or modify any order granted without notice to the adverse party by any court or a judge thereof from which an appeal would lie to such appellate division; *and the appellate division may grant any order or provisional remedy applied for without notice to the adverse party and refused by any court or a judge thereof from which an appeal would lie to such appellate division.*

(Emphasis added). Professor Siegel explains the difference between the first and second sentences of this provision as follows: "Under subdivision (a), the appellate division or any justice of it can vacate or modify an *ex parte* order granted by the lower court judge. If the lower court judge refused the *ex parte* order, however, and the applicant now wants it granted at the appellate division level, the application must be made to the whole court, not to an individual justice." *Id.* Translating that into the facts of this case: If Justice Cacace had signed the order to show cause, the State could have applied to a single justice of the Appellate Division to vacate that order. But since Judge Cacace refused to grant petitioners' *ex parte* application, the law required petitioners to make

application to the court, not simply to a single member thereof, in order to obtain judicial imprimatur for their order to show cause.

This they did not do. Instead, Petitioners presented their unsigned order to a single justice: Justice LaSalle of the Appellate Division: Second Department. His only statutory authority to sign the order to show cause derived, not from CPLR 5704, but from CPLR 7002(a) – which specifically authorizes a justice of the Appellate Division (a division of the New York State Supreme Court) to grant a writ of habeas corpus or to sign an order to show cause why a prisoner should not be released. Justice LaSalle heard oral argument on Petitioners' application; but he, like Judge Cacace, declined to sign the order to show cause.

No further effort was made to bring an application pursuant to CPLR 5704 before the only body that had the statutory authority to hear and grant it: the entire Appellate Division: Second Department.

*The Instant Petition*

On September 9, 2020, Petitioners filed their petition for a writ of habeas corpus in this court. Petitioners alleged that each of them was highly susceptible to contracting COVID-19 in prison. They claimed that the conditions in which they were being held were insufficiently protective, rendering their confinement "cruel and unusual punishment" in violation of the Eighth Amendment. Specifically, they contended that officials at Sing Sing either refused to take precautions necessary to protect them (such as by forcing guards, who were a likely source of viral transmission, to wear masks) or were simply unable to take such measures (petitioners specifically alleged that it was impossible to maintain "social distance" at Sing Sing). The petitioners demanded that they be released from jail as a result of the pandemic and its impact on their

conditions of confinement, because, they alleged, release was the only thing that could protect them from contracting the virus.

On November 25, 2020, the State responded to the petition with the aforementioned motion to dismiss. The motion was referred to the Hon. Sarah Netburn, U.S.M.J., for a Report and Recommendation, which issued on April 15, 2021. Her recommendations are described above (*see infra*, pp. 1-2).

The parties had fourteen days to file objections. Both sides did so.

Petitioners objected to Judge Netburn's conclusion that they had failed to exhaust their state remedies before coming to federal court. They also argued that, even if they had not, requiring them to engage in further state court litigation would violate the Due Process Clause of the United States Constitution.

Respondents had no objection to Judge Netburn's conclusion that the case had to be dismissed for failure to exhaust. However, in order to preserve their position for appeal, put in a *pro forma* objection to the learned Magistrate Judge's refusal to recommend dismissal of the petition on the ground that it should have been brought pursuant to 42 U.S.C. § 1983, not 28 U.S.C. § 2254. Thus, that precise issue is properly before this court.

## DISCUSSION

### I. The Claim Asserted Is A Conditions of Confinement Claim Which Does Not Lie in Habeas Corpus But Must Be Brought Under 42 U.S.C. § 1983

The first order of business is to decide whether the petitioners' claims can be maintained in habeas. The learned Magistrate correctly identified this as an unsettled area of law. The time has come for it to be settled.

A prisoner seeking relief from his imprisonment has "two main avenues" in federal court: a petition for habeas corpus under 28 U.S.C. § 2254, and a complaint under 42 U.S.C. § 1983.

*Muhammad v. Close*, 540 U.S. 749, 750 (2004) (*per curiam*). "Challenges to the validity of any confinement or to particulars affecting its duration" fall under the purview of habeas corpus; a petition for writ of habeas corpus permits an individual in custody to challenge the legality of his custody and secure his release if the custody is deemed illegal. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). By contrast, "requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Muhammad, supra.,* 540 U.S. at 749.

The Supreme Court first addressed the relationship between § 1983 and the federal habeas statutes in *Preiser v. Rodriguez*, *supra*. In *Preiser*, various prisoners who incurred disciplinary infractions while incarcerated brought an action challenging the cancellation of their good time credit under a New York State conditional release program. They commenced their lawsuits under 42 U.S.C. § 1983 and the federal habeas statute, 28 U.S.C. §2254. Lower courts held that the habeas allegations were simply adjuncts to what was essentially a § 1983 action and so did not require petitioners to exhaust their state remedies prior to bringing their habeas petition in federal court.

The Supreme Court reversed, holding that when a challenge falls within "the heart of habeas corpus," *id.* at 498, state prisoners could not proceed by way of a § 1983 action and bypass the exhaustion and other procedural requirements antedecent to the filing of a state habeas challenge in a federal court.[8] Claims that fall within the "core" of habeas corpus – those in which a prisoner "challeng[es] the very fact or duration of his physical imprisonment" – can be brought in federal court solely by means of a petition for the writ. *Id.* at 500. Since the challenge to the loss of good time credit was a challenge to the duration of their confinement, the Supreme Court concluded that the prisoners were not free to proceed in federal court under § 1983.

---

[8] At the time *Preiser* was decided in 1973, the PLRA, which was not enacted until 1996, was not yet law, so its separate exhaustion requirements were irrelevant.

However, the Supreme Court left open the question of whether the converse was also true, writing, "This is not to say that habeas corpus may not also be available to challenge . . . prison conditions. When a prisoner is put under additional and unconstitutional constraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal." *Id.* at 499.

Since *Preiser*, the Supreme Court has repeatedly declined to decide whether the proposition it identified as "arguable" is in fact allowable. For example, in *Bell v. Wolfish*, 441 U.S. 520 (1979), the Court left "to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself." *Id.* at 527 n.6. In *Boumediene v. Bush*, 553 U.S. 723 (2008), the Court declined to "discuss the reach of the writ with respect to claims of unlawful conditions of treatment or confinement." *Id.* at 792. And in *Muhammad* – in which the prisoner alleged that prison officials had subjected him to discipline and pre-hearing lockup in retaliation for prior lawsuits, but did not challenge either the legality of his disciplinary conviction or the additional seven days that were added to his sentence as a result of that conviction – the Court stated that the petitioner's claim arose under § 1983 suit because it could not "be construed as seeking a judgment at odds with [his] conviction or with the State's calculation of time to be served." The court went on to say that the petitioner "raised no claim on which habeas relief could have been granted *on any recognized theory*." 540 U.S. at 754-55 (emphasis added).[9]

Since *Preiser*, some Circuit Courts of Appeal – notably the D.C. Circuit, and the Sixth Circuit – have held that an individual in custody may challenge the conditions of his confinement

---

[9] It bears noting that *Muhammad* was not a case in which the petitioner wrongfully filed a habeas petition when he should have asserted a § 1983 claim. Rather, the Supreme Court held that Muhammad's allegations did not implicate its decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), because he challenged neither his disciplinary conviction or the length of his confinement.

in a petition for habeas corpus, *see, e.g.*, *Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014), *Hudson v. Hardy*, 412 F.2d 1091 (D.C. Cir. 1968), *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020). However, the Second Circuit has never so ruled. Here, as I understand it, is the state of the law in this Circuit, together with its implications for petitioners' case:

In *Jenkins v. Haubert*, 179 F. 3d 19, 28 (2d Cir. 1994), our Court of Appeals uttered a clear and concise statement about the meaning of the term "conditions of confinement:"

> 'Conditions of confinement' is not a term of art; it has plain meaning. It quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment. These include . . . general conditions affecting a prisoner's quality of life such as . . . the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution. In short, any deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement.

(citing *Figueroa v. Rivera*, 147 F.3d 77, 82) (1st Cir. 1998); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir. 1994)).

Petitioners here challenge their exposure to COVID-19. They argue that conditions and circumstances he setup of Sing Sing render the virus more transmissible and that they are peculiarly vulnerable to its impact. Pursuant to *Jenkins*, theirs can only be construed as challenge to the "conditions" under which they are confined. Petitioners do not argue that their convictions were invalid in the first instance, or that they are being detained for a period of time longer than that to which they were sentenced. Nor would their constitutional claim, if successful, "necessarily demonstrate[] the invalidity of the conviction." *See Heck v. Humphry*, 512 U.S. 477, 481-82 (1994). They are asking for relief from circumstances that arose during their otherwise lawful term of imprisonment. Their challenge does not fall within the "core" of habeas corpus, so per *Preiser*, habeas is at the very least not their exclusive remedy and may not be their remedy at all.

The next question is the unsettled one: whether § 1983 is Petitioners' exclusive remedy, given that their claim is a challenge to the conditions of confinement. The closest case on the subject is *Fielding v. LeFevre*, 548 F.2d 1102 (2d Cir. 1977). In that case, the petitioner sought release from his incarceration, on the ground that he was subject to unconstitutional conditions of confinement in that he was being denied adequate psychiatric care and was subject to a heightened risk of sexual assault by other prisoners. He brought his lawsuit under 28 U.S.C. § 2254, the federal habeas statute. The district court denied petition and the Second Circuit affirmed, holding that (1) petitioner had not established any constitutional violation because he was not entitled to any particular type of psychotherapy as long as he had access to psychiatric treatment (which he did), and because he adduced no convincing evidence that he would, in fact, be subject to risk of attack from other prisoners; and (2) even if he had, his remedy lay in § 1983, not habeas corpus. If there were a constitutional obligation to provide Fielding with the psychiatric treatment he sought, the court observed that, "the proper remedy is a suit under § 1983 to compel the state to afford prisoners access to psychotherapy." Similarly, insofar as Fielding complained about the threat of attack by other prisoners, the court reasoned that the proper remedy lay in § 1983 because there was no question that the conduct could be prevented by prison officials.

Significantly for our purposes, Fielding, like petitioners here, sought release – a remedy available only in habeas – rather than the injunctive relief or damages had could obtain in a § 1983 action. Indeed, Fielding alleged that nothing short of release would do, because prison officials could not provide him with the therapy to which he believed himself entitled. *Fielding*, 548 F.2d at 1108. But the Court of Appeals did not agree with Fielding's argument that the remedy requested dictated the proper form of action. It held, rather, that the propriety of the procedural vehicle should be determined by whether the petitioner was challenging his underlying conviction

or sentence (in which case, s/he should proceed in habeas) or the conditions of his confinement (in which case the proper vehicle was an action under § 1983).

I emphasize this because petitioners make exactly the same argument that Fielding made: they argue that they can proceed in habeas because they are seeking release, rather than to compel prison officials to implement policies that could keep them safe from COVID (such as mandating masks for corrections officials, one-to-a-cell confinement and other distancing measures – and today, offering vaccines, which a New York State judge has required be made available to all persons incarcerated by the State.[10]) Their position is that "the basic structure of *a* prison" – not just Sing Sing, presumably, but any prison – makes it impossible for prison officials to keep prisoners safe from the virus, such that "release is the necessary remedy here, [so] habeas corpus is the mandatory procedural vehicle." (Dkt. 25 at 2.)

Petitioners' focus on the remedy they seek, rather than the nature of their claim, is procedurally untenable. It would require a court to determine, at the very outset of a lawsuit, whether there are remedies short of release that could cure the alleged constitutional violation. Exactly how is a district court to do that? Petitioners contend that release is the only remedy that offers them redress, but the fact that they say so does not make it so. Any prisoner alleging any constitutional violation could proceed in habeas if all s/he had to do was assert that nothing short of release would cure the constitutional taint. In this case, Petitioners suggest that the court should hold a hearing – in advance of their proving any constitutional violation – in order to assess the effectiveness of remedies short of release that have been proposed by Respondents.[11] (Dkt. 25 at

---

[10] Order, *Holden, et al. v. Zucker*, Index No. 801592/2021E (N.Y. Sup. Ct., Bronx Cty., Mar. 29, 2021).

[11] Petitioners object to Respondents' citation to, or the court's consideration of, events that have occurred since September 2020 – notably the development of safe and effective vaccines for COVID-19 – that may have altered the ability of prison officials to keep them safe. But they insist that if such matters are to be part of the record, there needs to be an evidentiary hearing into the effectiveness of those remedies. (Dkt. 25 at 2.)

2.)  But the merits question in a habeas proceeding is whether there has been a constitutional violation.  It seems backwards to attempt to determine the appropriate remedy for a constitutional violation that has yet to be established; rather, it seems logical that the precise nature of the violation, if one is proved exists, should dictate the range of possible remedies.

The Second Circuit in *Fielding* did not treat petitioner's contention that only release would suffice as some well-pleaded fact that was to be presumed true, and allow the petitioner to proceed in habeas. Neither did the Court of Appeals suggest that a preliminary "remedies" hearing would be appropriate. Instead, it focused on the nature of Fielding's complaint, holding that certain types of prisoner lawsuits were properly brought in habeas and others were not.

As the Supreme Court has never identified any situation in which habeas "arguably" lies to remedy an unconstitutional condition-of-confinement claim, *Fielding* remains good law. To the extent that subsequent litigation (notably *Heck,* which requires prisoners bringing certain types of suits under § 1983 to satisfy the exhaustion requirements applicable to habeas proceedings) has worked any refinement in *Fielding*'s seemingly bright line rule, it certainly did not do so in a way that favors petitioners' position.

I thus part company with the learned Magistrate Judge when she distinguishes this case from *Fielding* on the ground that, in *Fielding*, there were remedies short of release available, whereas in this case there are allegedly no such remedies. *Fielding* and this case are, in my judgment, indistinguishable. Both complaints raise condition of confinement claims relating to health care (albeit one mental health and one physical health); and both complaints *allege* that prison officials cannot remedy the alleged violation, making release appropriate and habeas the correct remedy. If *Fielding*'s remedy lay in § 1983, so too does petitioners'.

Two COVID-era Second Circuit summary orders do nothing to undermine this court's conclusion that petitioners cannot proceed in habeas. In the first case, *Kielly v. Fitzpatrick*, No. 20-1496 (2d Cir. June 4, 2020), ECF No. 20, the Second Circuit adjudicated a motion for permission to file a second and successive habeas petition. The petitioner claimed that her guilty plea was involuntary because, at the time of her plea allocution, she did not know that she would be subjected to "cruel and unusual punishment" (the nature of which included, but was not limited to, confinement during a pandemic). The Court of Appeals denied the motion, reasoning that petitioner raised an impermissible second and successive attack on the validity of the original conviction. The Circuit transferred the petition to the district court so it could evaluate "the extent the petition raises a claim concerning the lawfulness of Petitioner's current conditions of confinement, *such as one properly brought pursuant to § 1983.*" *Id.* (emphasis added). This mandate hardly suggests that the Court of Appeals believes that COVID-related challenges to the conditions of confinement are properly brought in habeas – although I recognize that the issue was discussed only tangentially, as petitioner in *Kielly* was trying to get out of jail by obtaining vacatur of her guilty plea.

In the second case, *Sanchez v. State of New York*, No. 20-1391 (2d Cir. Aug. 6, 2020), ECF No. 29, the petitioner, who had previously filed a habeas petition challenging his state court conviction, sought permission to file a successive habeas petition based on his claim that the spread of COVID-19 throughout prisons rendered his confinement illegal. In other words, Sanchez brought the same case, in the same manner, as petitioners. Again, the Court of Appeals denied the petitioner's motion to file a successive habeas petition. The panel decided that the petitioner was not really filing a second and successive habeas petition because he was not challenging the validity of his underlying conviction or the judgment in his criminal case. Noting that the proposed

"petition" challenged post-sentencing conditions of confinement, *Sanchez v. Portuondo, et al*, No. 20-1391 (2d Cir. June 23, 2020), ECF No. 21, the Circuit again transferred the case to the district court and instructed it to answer the very question this court is now addressing: "whether Petitioner's claims should proceed under § 2254 or § 1983." Ultimately, the district court avoided grappling with this thorny question; petitioner Sanchez asked that his petition be dismissed without prejudice or held in abeyance pending exhaustion in the state courts, and my busy colleague Judge Rakoff was happy to oblige him, without further analysis or comment. *Sanchez v. Portuondo, et al*, No. 99-cv-01911-JSR (S.D.N.Y. Oct. 26, 2020), ECF No. 38.

So the Second Circuit's remand order in Sanchez actually suggests that this court should do precisely what I am now doing: decide whether this claim can be maintained under §2254 or must be brought under §1983.

Nor do cases disposed of by esteemed colleagues in this district and elsewhere in the Circuit counsel against the result I reach.

In *Elleby v. Smith*, No. 20-cv-02935 (PAE), 2020 WL 2611921, at *3 (S.D.N.Y. May 22, 2020) – a case with facts nearly identical to this one – a prisoner filed a *pro se* petition for a writ of habeas corpus under § 2254, in which he argued that the conditions of his confinement, which exposed him to COVID-19, violated the Eighth Amendment. He, like petitioners in this case, sought only immediate release from custody. Judge Engelmayer dismissed the petition for failure to exhaust state court remedies, but recognized that whether the petitioner's claim was properly raised only in a § 1983 suit remains an open question in this Circuit.

Judge Failla confronted the same facts in *Slater v. Keyser*, No. 20 Civ. 3012 (KPF), 2020 WL 4016759 (S.D.N.Y. July 16, 2020), and handled the case in the same way as Judge Engelmayer did. There too, the petitioner argued that his exposure to COVID-19 in prison rendered his

continued confinement unconstitutional. Judge Failla believed that the petitioner had "a strong claim that § 2254 [was] a viable source of relief," even though he only challenged the conditions of his confinement, because he sought release as his only remedy. *Id.* at *4. Nonetheless, the court reserved judgment on whether the petitioner's claim was cognizable under § 2254, and, like Judges Engelmayer, dismissed the petition because the petitioner failed to exhaust his state court remedies.

In short, the issue of whether Petitioners here have sued under the correct statute remains unresolved.

Several habeas petitions brought in the Western District of New York, alleging condition of confinement during the pandemic claims like those at bar, analogized the petitioners' situation to that of the petitioner in *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008). In *Thompson*, "the Second Circuit []specified that conditions of confinement claims by federal prisoners relate to the execution of their sentences," and so may be litigated under § 2241 *See Holloway v. Wolcott*, No. 20-CV-6329-FPG, 2020 WL 3172772, at *2 (W.D.N.Y. June 15, 2020); *see also Llewellyn*, 2020 WL 2525770, at *3 n.6.

But with all respect to my colleagues, *Thompson* does not speak to the question confronting this court. Because Thompson was a federal prisoner, a remedy under § 1983 was categorially unavailable to him. As a result, longstanding Second Circuit precedent indicated that he could challenge those conditions pursuant to § 2241, which our Court of Appeals has interpreted as covering such claims. State prisoners, who have a remedy available to then under § 1983, stand on an entirely different footing; § 2241 has no applicability to their condition of confinement claims. To the extent my Western District colleagues reasoned by analogy, I find the analogy unpersuasive.

Moreover, the Court of Appeals specifically declined to rest its decision on the ground that § 2241 was an appropriate vehicle for a federal prisoner to challenge conditions of confinement relating to the execution of his sentence. It ruled instead that district court – assuming it was correct about the civil rights claim – should have construed the *pro se* plaintiff's pleadings liberally and deemed them styled them appropriately, or granted the prisoner leave to replead, rather than simply dismissing his claims. *Thompson*, 525 F.3d at 209-10. The panel also noted that there was no impediment to joining civil rights claims and habeas claims in a single pleading, and noted that Thompson's petition also challenged the validity of his underlying conviction, which indisputably must be raised in habeas. *Id.* at 210.

So there simply is no persuasive authority resolving the underlying question.

The sensible and procedurally elegant solution is to hold, as the Second Circuit held in *Fielding*, that when a prisoner challenged the conditions of his confinement he must do so in an action under 42 U.S.C. § 1983. The case presents facts as close to the present circumstance as we can get: a prisoner challenging an alleged inability by prison officials to deal with a medical condition (albeit not a communicable one) and an allegation that only release will remedy the alleged constitutional violation. It is therefore this Court's opinion that the petition should be dismissed for failure to state a cognizable claim under 28 U.S.C. § 2254. Since the plaintiff is represented by counsel, I conclude that dismissal without prejudice to repleading the allegations under the correct statute, rather than "restyling," is the appropriate remedy; counsel are in the best position to replead the claims and to ascertain whether their clients have satisfied all prerequisites for bringing them.

**II.      If This Action Does Lie in Habeas, The Petition Must Be Dismissed for Failure to Exhaust State Remedies**

Assuming arguendo that this court is wrong, and this conditions of confinement claim can be maintained in habeas corpus, the petition must be dismissed because Petitioners have failed to exhaust their state court remedies.

There is no need to repeat Judge Netburn's detailed discussion of the law concerning a state prisoner's obligation to exhaust "the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). I adopt and deem incorporated into this opinion the discussion at Item B.1 of the Report, which begins at page 24 thereof.  To summarize briefly the conclusions that Judge Netburn correctly reached:

1. *Petitioners had a direct appeal to the Appellate Division from Judge Cacace's July 13, 2020 order declining to sign their order to show cause. CPLR 7011.*

By failing to file a notice of appeal from this appealable paper, petitioners have deprived the state courts of an opportunity to rule on the propriety of Judge Cacace's action. Not only have they failed to present their claim to the highest court in New York State that is capable of passing on it; they have not even presented their claim to the intermediate appellate court in New York. (Their failure to perfect the appeal from the Law Secretary's email has equally deprived the state courts of a chance to address Judge Cacace's ruling).

Petitioners have not presented this court with a valid excuse for their failure to take their direct appeal. They obviously knew how to file a notice of appeal from the refusal of a judge to sign their order to show cause, because they actually filed such a notice, albeit with respect to a paper that was neither a judgment nor an order. They have not suggested that they were physically prevented from filing a notice of appeal, whether due to the pandemic or otherwise.

I reject Petitioners' argument that they failed to notice an appeal from Judge Cacace's order because they had no direct appeal by virtue of the unpublished motion order entered by the Appellate Division: Second Department in a case called *Non-Human Rights Project Inc. v. Stanley*, 2014 N.Y. Slip Op. 68434(U), 2014 WL 1318081 (2d Dep't Apr. 3, 2014).

*NHRP* has to be one of the more unusual orders to have emanated from an Appellate Division in recent years. Petitioner, an animal rights activist group, brought an Article 70 habeas proceeding, by order to show cause, on behalf of two chimpanzees. The judge to whom the order to show cause was presented refused to sign it, citing three grounds – one of which was that only "persons" could file petitions under CPLR Article 70, and chimpanzees were not "persons." The trial level court also opined that there was no reason to bring on the matter *ex parte*, and held that the petitioners had adequate remedies at law.

NHRP filed a notice of appeal and its counsel, admitted in Massachusetts, filed a motion for admission *pro hac vice*. A panel of the Second Department *sua sponte* dismissed the appeal on the ground that it was from an *ex parte* order, which, per CPLR 5701, is not ordinarily appealable as of right. The court also denied leave to appeal, for reasons that it chose not to explain. The panel dismissed the *pro hac vice* motion as academic. The unpublished "decision" consists of fewer than 50 words. I am advised that the court subsequently declined to reconsider the matter.

The dismissal of the appeal in *NHRP* might appear on its face to be erroneous, since the right to appeal from the refusal to sign an order to show cause in an Article 70 proceeding is governed by CPLR 7011, not CPLR 5701.[12] Apparently the "decision" has no precedential value

---

[12] After considerable thought and reflection, I have come to the conclusion that the Second Department decision is actually correct. A petition filed pursuant to CPLR 7002 may only be filed on behalf of "*a person* illegally imprisoned or otherwise restrained in…liberty." The Appellate Division concluded that a chimpanzee was not a "person" and so could not take advantage of the relief available under Article 70 – which meant that the applicant was unable to take an appeal pursuant to the special appellate procedure under CPLR 7011, which is available to "a person" who files a petition (or order to show cause) pursuant to CPLR 7002 and whose petition or order to show cause is not signed. This meant that the chimpanzee's petition was simply an *ex parte* application that did not fall under Article 70; refusals to

– at least insofar as petitions brought by human beings are concerned – since in subsequent years, including as recently as 2020, the Second Department has entertained and decided a number of appeals from *ex parte* refusals to sign orders to show cause.  *See People ex rel Tse v. Barometre*, 131 N.Y.S.3d 896, 896 (2d Dep't 2020). If counsel truly believe that *NHRP* barred them from appealing under CPLR 7011, they would never have filed their first notice of appeal. The prudent course would have been to perfect that appeal – or better yet, to file a direct appeal from Judge Cacace's indisputably appealable paper – thereby protecting petitioners' rights in case (as more recent decisions suggest) a direct appeal did lie. Instead, petitinoers trusted that a decision which appears to have been roundly ignored in the Second Department would govern their situation. Given the state of the law in the Second Department, they had no right to so assume.

2. *If Petitioners Did Not Have a Direct Appeal to the Appellate Division They Were Required to Move for Permission to Appeal in Order to Exhaust*

If *NHRP* really did foreclose direct appeal *as of right* from an order refusing to sign an order to show cause brought under CPLR 7002(a) – which is to say, if one panel of the Second Department was free to read an entire section of the CPLR out of the statute as passed by the Legislature, and all those subsequent decisions of the Second Department and other Departments were wrong – then petitioners are hoist with their own petard. For as the panel in *NHRP* pointed out, there is a vehicle for obtaining review of *ex parte* orders (or refusals to grant same) in the ordinary course. Such orders are reviewable by permission. CPLR 5704(a). The correct thing to do in such a case was to file an application for review with appeal to the Appellate Division from Judge Cacace's refusal to sign their order to show cause.  *Id.*; CPLR 670.5(e). Petitioners did not

_____

sign such orders are not appealable pursuant to CPLR 5704. If I have surmised correctly – and subsequent decisions by the Second Department suggest that I have – *NHRP* has no applicability to any petition brought by a "person," and so no applicability to petitioners' situation.

file such an application. Whatever their view of the precedential value of *NHRP*, they were not at liberty to avoid taking that step.

3. *Petitioners' Due Process Rights Would Not be Violated By Enforcing The Exhaustion Requirement*

As Judge Netburn found, this issue was raised by Petitioners in the most conclusory fashion. The state procedures for exhaustion exist and are anything but onerous. In the New York state courts, as in the Second Circuit, there is a split of authority about of whether habeas corpus is a proper mechanism for challenging conditions of confinement when release is the remedy sought. A federal court would be much in need of guidance from the highest court of the state that might choose to issue a ruling on the point. That petitioners, for whatever reason, failed to present the issue to the Second Department in any meaningful form – filed a notice of appeal from what they believe to be not an appealable paper, failed to file a notice of appeal or seek leave to appeal from what is unquestionably an appealable paper, and then failed to perfect the appeal that they did file – is unfortunate, but it bars this court from entertaining their 2254 petition.

Dated: June 23, 2021
New York, New York

United States District Judge

BY ECF TO ALL COUNSEL